IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROBERT LABRIOLA, on behalf of himself and those similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION; MERRILL LYNCH, PIERCE, FENNER & SMITH INCORP.; BANK OF AMERICA CORPORATION; and Does 3-50, inclusive,<br><br>      Defendants. | No. C 12-79 CW<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR STRIKE<br>(Docket No. 9) |

Defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated moves to dismiss or strike Plaintiff John LaBriola's First Amended Complaint (1AC).[1] Plaintiff opposes the motion. Having considered the papers filed by the parties and their oral arguments at the hearing, the Court DENIES Defendant's motion.

BACKGROUND

The following allegations are taken from the 1AC.

Plaintiff began working as a financial advisor for Defendant in 1992. He resigned his position on January 15, 2010. Plaintiff alleges that Defendant has a policy of failing to pay financial advisors their final commissions until on or after the "regular commission pay date," even if that date was weeks after the employee's last date of employment. Under this policy, Plaintiff

---

[1] On February 24, 2012, the Court granted the parties' stipulation to dismiss Defendants Bank of America, National Association and Bank of America Corporation. Docket No. 14.

did not receive his final commission check until March 5, 2010, more than thirty days after it was calculable.

Plaintiff brings suit on behalf of himself and a putative class of all financial advisors who worked for Defendant from December 1, 2008 through the present and who either: (a) resigned and did not receive the portion of their commissions that were calculable within seventy-two hours of providing notice of resignation, or seventy-two hours of their last date of employment, whichever is later; (b) were terminated and did not receive the portion of their commissions that were calculable on their last day of work; or (c) after the termination date or the expiration of the seventy-two-hour resignation notice period, did not receive the balance of their commissions on the date or dates they were calculable.

On behalf of himself and this putative class, Plaintiff asserts claims against Defendant for waiting time penalties under California Labor Code sections 201 through 203 and for injunctive relief under the Unfair Competition Law (UCL), California Business and Professions Code sections 17200, et seq. Plaintiff also seeks payment of his attorneys' fees.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the

complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

Under Federal Rule of Civil Procedure 12(f), the Court also may strike from a pleading "any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994). A matter is immaterial if it has no essential or important relationship to the claim for relief plead. Id. A matter is impertinent if it does not pertain and is not necessary to the issues in question in the case. Id.

DISCUSSION

Defendant moves to dismiss Plaintiff's claims for waiting time penalties under Labor Code section 203 and for injunctive relief under the UCL. Defendant also seeks to strike or dismiss from the complaint the class allegations and Plaintiff's request for attorneys' fees.

I. First Cause of Action: Violation of Labor Code sections 201 through 203

California state law defines "wages" to include "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Labor Code § 200(a). Labor Code section 201 provides, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Id. at § 201(a). Labor Code section 202 provides that, if an employee quits, "his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting." Id. at § 202(a). State law provides a statutory penalty of up to thirty days of wages if "an employer willfully fails to pay, without abatement or reduction . . . any wages of an employee who is discharged or who quits." Id. at § 203(a).

Defendant argues that these code sections apply only to wages that are earned and calculable at the time of discharge. Plaintiff responds that he did not allege that the commissions were earned and calculable only after the termination of

4

employment.  In the complaint, he alleges that he resigned on January 15, 2010, and that he did not receive his final commission check until March 5, 2010, "more than thirty days after it was calculable."  FAC ¶¶ 15-16.  The allegations in the FAC therefore can be reasonably read to encompass both commissions that were earned and calculable before Plaintiff's resignation, but not paid at the time of his resignation, and commissions that were not calculable until after his resignation, but were calculable not later than thirty-one days before March 5, 2010.  Defendant does not appear to dispute that these laws require that wages calculable when Plaintiff resigned be paid at that time, or at latest seventy-two hours afterwards.

Plaintiff also argues that, for wages that become calculable after termination of employment, these laws require prompt payment after the amount is calculable, and that he has sufficiently alleged Defendant failed to make such payment.  Defendant contends that state law does not contain any provision prescribing when employers must pay wages that only become calculable after the employee's employment has ceased.  In support of their positions, both parties point to opinion letters from the California Division of Labor Standards (DLSE) to interpret Labor Code sections 201 through 203, and ask this Court to take judicial notice of these letters.

While these letters do not have the force of law, California courts regularly resort for guidance to DLSE opinion letters when interpreting the state's labor code.  See Koehl v. Verio, Inc., 142 Cal. App. 4th 1313, 1334 n.7 (2006) (stating that DLSE "[a]dvisory opinions . . . while not controlling upon the courts

5

by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance") (citing Bell v. Farmers Ins. Exch., 87 Cal. App. 4th 805, 815 (2001)) (internal quotations omitted). See also Yamaha Corp. of America v. State Bd. of Equalization, 19 Cal. 4th 1, 7-8 (1998) ("Courts must, in short, independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation. Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth.").

On January 9, 1999, the DLSE issued an opinion letter that directly addressed the payment of commissions upon termination of employment. Based on the language of sections 201 and 202, which refers to wages that are "earned and unpaid" and does not refer to when the amount owed is calculated, the DLSE stated, "The central focus of inquiry . . . must be on when the employee 'earns' the commissions, rather than on when the employer subsequently calculates and pays these commissions to its current employees." State of California, Department of Industrial Relations, Division of Labor Standards Enforcement, Opinion Letter: Payment of Commissions Upon Termination of Employment 2 (Jan. 9, 1999), available at http://www.dir.ca.gov/dlse/opinions/1999-01-09.pdf. The DLSE also stated, "A commission is 'earned' when the employee has perfected the right to payment; that is, when all of the legal

6

conditions precedent have been met." Id.  In the sales context, for example, typically this is "when a sale is made, when the merchandise is delivered to the customer, or when the customer pays for the merchandise." Id.  Based on this interpretation of sections 201 and 202, the DLSE concluded,

> In the event that commissions have been "earned" on or before the date of an employee's termination, the employer must complete the necessary calculations and pay the commissions on the date of the termination in the case of a discharge or a voluntary quit with more than 72 hours prior notice, or within 72 hours of termination in the case of a voluntary quit without such prior notice.  It is not permissible to wait until the customary time for calculating the commissions of current employees, nor is it permissible to delay payment of such earned commissions until the next regularly scheduled payday(s).  If the commission has not yet been earned at the time of termination, and is awaiting the completion of some legal condition precedent (for example, receipt of the customer's payment), the commission must be paid to the terminated employee immediately upon completion of the conditions precedent.

Id. at 3.  Thus, under this interpretation, Defendant was required to pay Plaintiff, at the time of his termination, any commissions that it could have calculated, as previously stated, and was required to pay him immediately any commissions that subsequently became calculable.

Contrary to Defendant's assertions, the 1999 opinion letter is not inconsistent with, or undermined by, the other DLSE opinion letters to which Defendant points.  Neither of the letters directly addresses the situation at issue here.  In one, in responding to a question regarding when commission wages must be calculated and paid to current employees, the DLSE stated, "It would only be those commissions which were 'earned' which would be subject to the provisions of §§ 201 and 202.  That is, those

7

1 commissions for which all of the legal conditions precedent had
2 been met." State of California, Department of Industrial
3 Relations, Division of Labor Standards Enforcement, Opinion
4 Letter: Request for Administrative Opinion 3 (March 8, 1993),
5 available at http://www.dir.ca.gov/dlse/opinions/1993-03-08.pdf.
6 The DLSE also stated, "The fact that the employer might find it
7 difficult to compute the commissions owed would not alleviate the
8 obligation to pay the wages as provided in the statutes." Id.
9 These statements are not contrary to the 1999 opinion that the
10 employer was required to pay at the time of discharge the
11 commissions for which all legal conditions precedent were met or
12 that it was required to pay immediately those that were
13 subsequently met, and that the normal time of calculation does not
14 matter.

15 In the other letter, the DLSE responded to a question about
16 the interpretation of Labor Code section 204, which relates to the
17 timing of wage payments, and stated, "If commissions cannot be
18 calculated until after an event has happened then the commissions
19 are not 'earned' under the meaning of Section 204 until the
20 happening of that event so long as the event is reasonably tied to
21 the calculation." State of California, Department of Industrial
22 Relations, Division of Labor Standards Enforcement, Opinion
23 Letter: Commission Payments 2 (December 9, 2002), available at
24 http://www.dir.ca.gov/dlse/opinions/2002-12-09-2.pdf. The DLSE
25 further stated,

> It is important to point out, as well, that in cases where the commission cannot be ascertained until the happening of a condition subsequent, the imposition of penalties under Labor Code § 203 in the event of termination of employment (see Labor Code §§ 201 and

8

> 202) would not be appropriate.  Those commissions which were not reasonably ascertainable would not be "due."

Id.  Again, this does not conflict with the 1999 letter.

As previously stated, under California law, a court must "independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning." Yamaha, 19 Cal. 4th at 7-8.  In construing an ambiguous statute, a court should "avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend." Pineda v. Bank of America, N.A., 50 Cal. 4th 1389, 1394 (2010) (quoting People v. Mendoza, 23 Cal. 4th 896, 908 (2000)).  See also Smith v. Superior Court, 39 Cal. 4th 77, 83 (2006) (courts must "choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences").  Further, the California Supreme Court has recognized repeatedly "that statutes governing conditions of employment are to be construed broadly in favor of protecting employees."  Id. (quoting Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1103 (2007)).  It has also recognized that the intent in enacting sections 201 through 203 was to protect the "fundamental public policy" supporting "full and prompt payment of an employee's earned wage," which is "indispensable to the public welfare."  Smith, 39 Cal. 4th at 82. Thus, this Court declines to read sections 201 through 203 as imposing no obligation whatsoever on Defendant to make commission payments that have subsequently become calculable in a timely fashion to terminated employees.  To hold otherwise would disregard the legislative intent underlying these statutes.

9

Defendant also argues that Plaintiff has not sufficiently alleged that its failure to pay timely was willful. Plaintiff responds that he did so by alleging that Defendant's failure to pay was as a result of an illegal policy and practice, as opposed to a mistake or oversight.

Defendant argues that this allegation is insufficient to the extent that Plaintiff's waiting period claim is premised on amounts that became calculable only after his termination, because Defendant disputes, in good faith, the content and requirements of the law. "Willful" under section 203 "means that one intentionally fails or refuses to perform an act which is required to be done." Davis v. Morris, 37 Cal. App. 2d 269, 274 (1940). Thus, "a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Smith v. Rae-Venter Law Group, 29 Cal. 4th 345, 354 (2002) (quoting Cal. Code Regs., tit. 8, § 13520). For example, in Barnhill v. Robert Saunders & Co., 125 Cal. App. 3d 1 (1981), the employer set off the employee's unpaid borrowings from the employer against the employee's final wages. While the appellate court found that this was improper, it nevertheless reversed the trial court's award of section 203 penalties against the employer, finding that the employer had not acted "willfully" because, given the uncertainty in the law, the employer had "entertain[ed] a good faith belief that it was entitled to such a set-off." Id. at 7-8. While Defendant may be able to establish ultimately that it had a good faith belief that the commission payments were not due before the regularly scheduled payment times, this is a factual issue, inappropriate for resolution at the motion to dismiss stage.

10

Finally, to the extent that Defendant argues that Plaintiff has not made sufficient factual allegations to support his claims, Defendant is incorrect. Plaintiff alleges that he was not paid his commissions until March 5, 2010, more than thirty days after they were calculable and several months after his termination date. This is enough to suggest plausibly a claim for violation of section 203

Accordingly, the Court DENIES Defendant's motion to dismiss the first cause of action.

## II. Second Cause of Action: Violation of the Unfair Competition Law

Defendant argues that Plaintiff does not have Article III standing or standing under the UCL to bring a claim seeking injunctive relief for unfair competition.

To assert this claim in federal court, Plaintiff must satisfy the standing requirements of both the UCL and Article III. See Birdsong v. Apple, Inc., 590 F.3d 955, 960 n.4 (9th Cir. 2009). "To have standing to seek injunctive relief under Article III 'a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.'" Pac. Rivers Council v. United States Forest Serv., 668 F.3d 609, 618 (9th Cir. 2012) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)).

"To have standing under California's UCL, as amended by California's Proposition 64, plaintiffs must establish that they

11

(1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition." Birdsong, 590 F.3d at 960 (citing Cal. Bus. & Prof. Code § 17204; Walker v. Geico Gen. Ins. Co., 558 F.3d 1025, 1027 (9th Cir. 2009)). "In determining whether a plaintiff has suffered an 'injury in fact' for purposes of the UCL, California has incorporated the federal meaning of the term." Levitt v. Yelp! Inc., 2011 U.S. Dist. LEXIS 99372, at *24 (N.D. Cal.) (citing Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, at *5 (2011)). However, state law mandates that a UCL plaintiff have suffered an "injury in fact" in a particular form, that is, "in the form of economic injury." Degelmann v. Advanced Med. Optics Inc., 659 F.3d 835, 839 (9th Cir. 2011).

Defendant argues that Plaintiff has not established sufficiently that he suffered an injury in fact. In both the UCL and Article III contexts, courts have recognized that the "injury in fact" requirement is not a substantial hurdle and that a minimal, "identifiable trifle" of injury is sufficient. See, e.g., Preminger v. Peake, 552 F.3d 757, 763 (9th Cir. 2008); Kwikset Corp., 51 Cal. 4th at 324-325. Plaintiff alleges that Defendant's payment of his commissions was delayed by at least a month. During that time, Plaintiff was deprived of the use of his money, including the ability to earn interest from it. Thus, Plaintiff has sufficiently identified an economic injury to support standing under both Article III and the UCL.

Defendant also argues that Plaintiff cannot meet the redressability requirement for Article III standing. Defendant cites several cases in which district courts have found that former employees did not have standing to seek prospective relief

12

to change an employer's employment practices. See, e.g., Richards v. Ernst & Young LLP, 2010 U.S. Dist. LEXIS 16366, at *6-8 (N.D. Cal.); DeLodder v. Aerotek, Inc., 2009 U.S. Dist. LEXIS 109256, at *5-10 (C.D. Cal.) (failure to pay overtime and benefits, failure to provide meal and rest breaks). However, the cases that Defendant cites are distinguishable, in that they address an employer's policies and practices toward its current employees, not its treatment of its former employees. See Richards, 2010 U.S. Dist. LEXIS 16366, at *6-8 (failure to provide meal and rest breaks); DeLodder, 2009 U.S. Dist. LEXIS 109256, at *2-4. Here, Defendant's alleged violations are directed only toward former employees. Further, where a plaintiff may return to work for his former employer, he may benefit from an injunction changing its employment practices, and therefore has standing. See, e.g., Walsh v. Nev. Dep't of Human Res., 471 F.3d 1033, 1037 (9th Cir. 2006) (finding no standing where there was no indication that the plaintiff may return to work for her former employer, because she would not stand to benefit from an injunction at her former work place); Heffelfinger v. Elec. Data Sys. Corp., 2008 U.S. Dist. LEXIS 5296, at *68-69 (C.D. Cal.) (denying class certification to pursue injunctive relief where the plaintiffs produced no evidence suggesting that they intended to seek re-employment). Here, Plaintiff quit his job with Defendant after eighteen years of employment; he was not fired, and there is no indication in the complaint that he could not be re-hired by Defendant as a financial advisor if he so desired. Thus, there is a prospect that he may return to work for Defendant and be subjected to the challenged policy again in the future.

Accordingly, the Court DENIES Defendant's motion to dismiss the second cause of action.

III. Class Action Allegations

Defendant seeks to dismiss or strike the class action allegations from the complaint under Rule 12(b)(6), Rule 12(f) or Rule 23(d)(1)(D), on the basis that there is no reasonable possibility that Plaintiff will be able to meet the Rule 23 requirements.

Defendant cites no published cases in which courts have employed Rule 12(b)(6) to assess these requirements for class certification. In its reply, Defendant cites Pryor v. Aerotek Scientific, LLC, Case No. 10-6575 (C.D. Cal. Mar. 14, 2011), to support its assertion that "district courts have granted Fed. R. Civ. P. Rule 12 motions to dismiss or strike class action allegations at the pleading stage." Reply at 11. However, in that case, the court granted the defendant's motion to dismiss the individual claims for failure to state a claim and thus dismissed the class claims for the same reason. Pryor, Docket No. 21, 9-10 n.25. In doing so, the court specifically noted "its view that motions to dismiss are generally not the appropriate vehicle to challenge class allegations" and stated that if it "had not dismissed [the plaintiff's] individual claims, it would have denied [the defendant's] motion to dismiss the class allegations." Id. Defendant also relies on an unpublished Ninth Circuit case that this Court cannot properly cite. See Mot. at 13 (citing Kennedy v. Unumprovident Corp., 50 Fed. Appx. 354, 355 (9th Cir. 2002)). Further, Kennedy presents a situation different from the case at hand: in that case, the plaintiff sought to assert an

14

individual claim for benefits under ERISA but tried to represent class members whose claims for benefits could only be maintained under state law. Kennedy, 50 Fed. Appx. at 356. Thus, the court found that the plaintiff was atypical as a matter of law. Here, however, Plaintiff seeks to assert the same claims on behalf of the class as he does on behalf of himself. The court in Kennedy also dismissed another claim on the basis that the plaintiff could not assert a class claim under the UCL where she did not have standing to bring it in federal court, not because she failed to meet the Rule 23 requirements. Id. at 356. Here, the Court has denied Defendant's motion to dismiss Plaintiff's UCL claim for lack of standing.

"While courts entertain [Rule 12(f) motions to strike class allegations], it is rare that the class allegations are stricken at the pleading stage." Clerkin v. MyLife.com, Inc., 2011 U.S. Dist. LEXIS 96735, at *9-10 n.4 (N.D. Cal.). Defendant makes no argument that Plaintiff's "allegations are 'redundant, immaterial, impertinent, or scandalous.'" Id. (quoting Federal Rule of Civil Procedure 12(f)). Instead, Defendant argues under Rule 23 that class treatment is improper as a matter of law, on the basis that the class is unascertainable and individual issues predominate.

"An adequate class definition specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity.'" Sullivan v. Kelly Servs., 268 F.R.D. 356, 362 (N.D. Cal. 2010) (quoting Campbell v. PricewaterhouseCoopers, LLP, 253 F.R.D. 586, 593 (E.D. Cal. 2008); Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978)). "The identity of class members must be ascertainable by reference to objective criteria."

15

Id. (quoting 5 James W. Moore, Moore's Federal Practice, § 23.21[1] (2001)). "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." Hanni v. Am. Airlines, Inc., 2010 U.S. Dist. LEXIS 3410, at *24 (N.D. Cal.)(quoting Moore, supra, § 23.21[3][c]).

Defendant argues that the class is not ascertainable, because the Court will be required to conduct mini-trials on the merits to know whether any particular person is a class member. Defendant argues that all class members will have to prove, on an individual basis, that they satisfied the conditions precedent for earning a commission and when they did so, when the final payment became calculable and when they were given their final commissions payment. However, instead of relating to whether Defendant's common policy is unlawful, these matters go to the calculation of damages, which "is invariably an individual question and does not defeat class action treatment." Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975) (citations omitted). Further, these items are readily ascertainable from Defendant's own records. See Tetsuo Akaosugi v. Benihana Nat'l Corp., 2012 U.S. Dist. LEXIS 45560, at *36 (N.D. Cal.) ("Classes are sufficiently definite when '[a]ll the parameters for membership in th[e] class are objective criteria, and defendant['s] business records should be sufficient to determine the class membership status of any given individual.'") (quoting Hofstetter v. Chase Home Fin., LLC, 2011 U.S. Dist. LEXIS 38124, at *12, 14 (N.D. Cal.)).

Defendant also argues that the definition is facially overbroad, because it may encompass individuals who have already

16

received waiting-time penalties or who are not entitled to benefit under section 203 because they secreted or absented themselves to avoid payment or refused payment when it was tendered. Mot. at 15. However, this question goes more appropriately to commonality and predominance, where Defendant also raises it.

Rule 23 contains two related commonality provisions. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(b)(3), in turn, requires that such common questions predominate over individual ones. While, in its motion, Defendant states that "no commonality exists as a matter of law," Mot. at 15, Defendant's arguments actually relate to whether common questions predominate, not whether any common questions exist at all. On the face of the 1AC, Plaintiff has identified at least one common question: whether Defendant had a policy and practice of delaying payment of final wages. 1AC ¶ 20(2)(iii). Defendant offers no argument as to how this common question fails to satisfy the commonality requirement. See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011) (recognizing that "commonality only requires a single significant question of law or fact"); Mazza v. Amer. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012) (same). This question can be resolved on a class-wide basis, and the common answer is apt to drive resolution of the litigation. Accordingly, Plaintiff has satisfied the commonality requirement.

Plaintiff seeks certification under both Rule 23(b)(2) and (3). Defendant does not argue that Plaintiff cannot meet the Rule 23(b)(2) requirements as a matter of law; instead, Defendant contends only that individual issues of law and fact necessarily

17

will predominate, which is an attack of Plaintiff's ability to meet the predominance requirement of Rule 23(b)(3). However, several of the issues which Defendant characterizes as individual, such as whether any late payments were made "willfully," are actually common questions under the legal theory put forward by Plaintiff, which is that Defendant failed to make these payments in a timely fashion because of its general policy, not because of the facts related to any individual class member. Other assertions by Defendant are speculative at this point; it has not asserted that it has actually paid waiting-time penalties to any putative class members or that any putative class members have in fact secreted or absented themselves or refused to accept payment when tendered. At this stage, the Court declines to find that, as a matter of law, Plaintiff will not be able to establish that common issues predominate.

Accordingly, Defendant's request to strike the class action allegations is DENIED.

IV. Request for Attorneys' Fees

Defendant also seeks to strike Plaintiff's request for attorneys' fees under California Code of Civil Procedure section 1021.5. Under this section,

> a court may award attorneys' fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Code Civ. Proc. § 1021.5.

18

Defendant argues that the primary purpose of the lawsuit was to advance Plaintiff's own economic interests and that, because the UCL claim for injunctive relief should be dismissed, Plaintiff cannot premise the request for attorneys' fees under section 1021.5 on that claim. However, the Court has denied Defendant's motion to dismiss the UCL claim and to strike the class action allegations.

Accordingly, the Court DENIES Defendant's motion to strike the request for attorneys' fees.

CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's motion to dismiss or strike (Docket No. 9).

IT IS SO ORDERED.

Dated: 5/10/2012

CLAUDIA WILKEN
United States District Judge

19